IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


BEAU JAMES MUSACCO,

      Petitioner,

v.                                                            Civ. No. 14-683 MV/GBW

GERMAN FRANCO, Warden, and
THE ATTORNEY GENERAL OF
THE STATE OF NEW MEXICO,

      Respondents.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Petitioner's motion for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (*doc. 1*).  After Defendants' Response (*doc. 14*) and Plaintiff's Reply (*doc. 41*) were filed, the Court held a hearing on the matter.  *See doc. 47.* Subsequently, the Court ordered supplemental briefing on particular issues.  *See docs. 47, 48.*  Having considered the supplemental briefing (*docs. 53, 54*) and the rest of the record, the undersigned recommends dismissal with prejudice of all claims brought by Petitioner.  With respect to Petitioner's argument about the ineffectiveness of state *habeas* counsel, the undersigned recommends finding that it is not properly raised in his federal Petition.

I.     BACKGROUND OF STATE PROCEEDINGS

     On January 18, 2007, Petitioner was indicted on *inter alia* two counts of willful and deliberate first-degree murder, in violation of N.M. Stat. Ann. § 30-2-1(A)(1); one

count of fourth-degree tampering with evidence, in violation of N.M. Stat. Ann. § 30-22-5; and the misdemeanor offense of concealing identity, in violation of N.M. Stat. Ann. § 30-22-3.  *See doc. 14*, Ex. O.  Two members of the New Mexico Public Defender Department, James Loonam and Ralph Odenwald, represented Petitioner at trial and in pretrial proceedings.  *See doc. 14*, Ex. J at 3.  On February 13, 2009, State District Court Judge Ross Sanchez held a hearing on Petitioner's motion to suppress evidence taken from the hotel room in which he had been arrested.  *See doc. 15* (Feb. 13, 2009 Mot. Tr., Vol. 3); *see also doc. 14*, Ex. Q.  Judge Sanchez denied the motion on the ground that, notwithstanding the absence of a warrant, the existence of exigent circumstances justified entry into the motel room and the collection of the evidence therein.  *See doc. 15* (Feb. 13, 2009 Mot. Tr., Vol. 3 at 81-82).

On March 6, 2009, a jury found Petitioner guilty of two counts of willful and deliberate first-degree murder; one count of fourth-degree tampering with evidence; and the misdemeanor offense of concealing identity.  *See doc. 14*, Ex. A at 2-5 & Ex. O. Petitioner was sentenced to a total term of 62 ½ years of imprisonment, to be followed by 2 years of parole.  *Id.*, Ex. A at 4.

On July 21, 2009, Petitioner filed a notice of appeal followed by a Statement of the Issues in which he argued that: (1) Officer Carter's warrantless entry into Room 216 violated both the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution because it was not, in fact, supported by

exigent circumstances; (2) the warrantless hand swabbing similarly violated Petitioner's state and federal constitutional rights; (3) given a questionable chain of custody, Judge Sanchez erred in allowing the admission of the boots taken from Room 216; and (4) the evidence presented at trial was insufficient to support the convictions. *See id.*, Ex. B & Ex. E at 6-34. Following full briefing, the New Mexico Supreme Court affirmed Petitioner's convictions in an 18-page Decision. *See id.*, Exs. F, G, H. The mandate issued on June 7, 2012. *See id.*, Ex. I.

On April 29, 2013, Petitioner, through counsel Rod Thompson, filed a state petition for *habeas corpus*, arguing that his trial attorneys had been ineffective for failing to: (1) move to dismiss for speedy trial violations; (2) present expert psychological testimony as to Petitioner's alleged inability to form the *mens rea* necessary to commit willful and deliberate first-degree murder; and (3) move for a change of venue. *See id.*, Ex. J at 8-11, 14-16. Petitioner also contended that: (4) as a result of the "increasingly untenable caseloads" faced by the New Mexico Public Defender Department, he was a victim of systemic ineffective assistance of counsel; and (5) his attorneys performed in a generally unreasonable manner. *See id.*, Ex. J at 7-8, 12-14.

The State responded, and Judge Sanchez denied the Petition, holding, among other things, that: (1) the claims asserted were vague, unsubstantiated, and entirely speculative; (2) due to Petitioner's refusal to waive attorney-client privilege, the court was unable to assess whether his trial counsels' decisions were strategic and/or tactical;

(3) Petitioner had not established that trial counsels' performance fell below that of

reasonably competent attorneys; and (4) Petitioner had failed to show that he was

prejudiced as a result of the representation which he alleged was a constitutionally

deficient.  *See id.*, Exs. K, L.

On March 28, 2014, Petitioner's state *habeas* counsel timely petitioned the New

Mexico Supreme Court for a writ of certiorari.  *See generally id.*, Ex. M.  On July 28, 2014,

the petition was denied.  *See id.*, Ex. O.

## II.   BACKGROUND OF INSTANT PETITION

The operative Petition was filed in this Court on August 22, 2014.  *See doc. 3*.  It

identifies several grounds for relief.  First, Petitioner raises numerous claims of

ineffective assistance of trial counsel.  He claims his trial counsel provided ineffective

assistance of counsel by failing to: (i) present a meritorious defense, (ii) present expert

testimony, (iii) move to dismiss on speedy trial grounds, and (iv) move for change of

venue.  Second, Petitioner argues that the New Mexico Supreme Court erred in rejecting

his appeal on the following issues: (i) Officer Carter's warrantless entry into the Econo

Lodge Room 216, (ii) the warrantless swabbing of Petitioner's hands; (iii) the admission

into evidence of the boots taken from Room 216 despite the allegedly inadequate chain

of custody; and (iv) the alleged insufficiency of the evidence.  Finally, Petitioner claims

that the state district judge erred in denying the state *habeas* petition without holding an

evidentiary hearing.  Respondent concedes that each of these claims has been properly exhausted in the state courts.[1]

In his Response to Respondent's Motion to Dismiss, Petitioner, through counsel, highlights certain issues.  Most importantly, Petitioner raises a new argument – that the ineffective assistance of his state *habeas* counsel led to the lack of an evidentiary hearing and subsequent rejection of the state *habeas* petition.  It is undisputed that this argument was not raised in state court in any fashion.  *See generally doc. 47.* Consequently, the Court held a hearing and ordered supplemental briefing to determine if this argument rendered the Petition "mixed" for exhaustion purposes.  *See docs. 47, 48, 53, 54.*

### III.   PETITIONER'S ARGUMENT REGARDING STATE *HABEAS* COUNSEL IS NOT A CLAIM PROPERLY PRESENTED IN THE INSTANT PETITION

According to Petitioner's Response, his state *habeas* counsel advised him not to waive the attorney-client privilege between him and his trial counsel.  *See doc. 40* at 5.[2] Consequently, the state court declined to hold an evidentiary hearing on Petitioner's

---

[1] With respect to Petitioner's claim about the failure to call expert witnesses, Respondents note that Petitioner contends, apparently for the first time in this federal *habeas* petition, that counsel was ineffective for failing to call Dr. Barbara Wright as a witness.  *Doc. 14* at 16, n.3.  To the extent that inclusion of this claim renders the Petition a "mixed" one for exhaustion purposes, Respondents expressly waive the exhaustion defense as to that claim.  *Id.*

[2] While it is not clear on the record what advice state *habeas* counsel gave Petitioner, counsel explained in the certiorari petition that he had "attempted to broker an agreement with [one of Petitioner's trial attorneys] in which [trial counsel] would agree to only divulge information that was narrowly tailored to matters at hand in the petition for writ of *habeas corpus*. Instead, [trial counsel] refused and insisted that [Petitioner] sign a blanket waiver of confidentiality.  For someone such as [Petitioner] who ha[d] yet to exhaust his remedies in this case, that information could [have been] used against him." *Doc. 14*, Ex. M at 2.

state *habeas* motion because, without the testimony of trial counsel, the court would be unable to conduct any further meaningful investigation into whether trial counsel's choices were made pursuant to a reasonable litigation strategy.  *Doc. 14*, Ex. L at 2; *doc. 14*, Ex. M at 2.  Petitioner now claims that, due to its effect of preventing a necessary evidentiary hearing, his state *habeas* counsel's advice constituted ineffective assistance. *See doc. 40* at 4-8.  The theory that ineffective assistance of state *habeas* counsel can serve as a basis for federal *habeas* relief arises from two recent Supreme Court rulings on the doctrine of procedural default -- *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).

The doctrine of procedural default prevents a federal court from considering the merits of even constitutional claims where, because of the petitioner's failure to follow a state procedural rule, the state court has opted not to address the merits of those claims. As a result, "a state procedural default of any federal claim will bar federal habeas unless the petitioner demonstrates cause and actual prejudice."  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).  In *Martinez*, the United States Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  132 S. Ct. at 1320.  The following year, in *Trevino*, the Court extended

its holding to situations where, as in New Mexico, state law does not require that ineffective-assistance claims first be brought in state *habeas* proceedings, but expresses such a preference. *See* 133 S. Ct. at 1915.

The central holdings of *Martinez* nor *Trevino* are not directly applicable to the present situation. Respondents have never asserted procedural default of any of the claims included in the Petition. Thus, there is no need to address whether the ineffectiveness of state *habeas* counsel should excuse that default. Nonetheless, *Martinez* and *Trevino* can be read to establish a stand-alone right to effective assistance of counsel in state *habeas* proceedings, at least when raising claims of ineffectiveness of trial counsel. *See Martinez*, 132 S. Ct. at 1321-27 (Scalia, J., dissenting). Assuming that proposition, however, Petitioner's argument about the alleged ineffectiveness of state *habeas* counsel raises a new claim. While it is related to his argument that the state court erred in denying his *habeas* petition, it is a separate claim. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (a claim for ineffective assistance of counsel and an underlying substantive claim are separate, independent claims); *see also Bond v. Walker*, 68 F. Supp.2d 287, 296 (S.D.N.Y. 1999). His federal *habeas* counsel in the instant case has expressly conceded as much. *See doc. 47* at 1-3. However, Petitioner has never moved pursuant to Fed. R. Civ. P. 15 to amend his Petition in order to add such a claim. *See Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001) (*habeas* petitions are subject to Rule 15). This fact alone means that Petitioner's argument regarding state *habeas*

counsel is not a claim properly before this Court.  *See, e.g. Triplet v. Franklin*, 2006 WL 2039975, at *1 (W.D. Okla. Jul. 18, 2006) (refusing to consider claim raised for first time in petitioner's response); *Martin v. Ballard*, 2015 WL 5484136, at *18 (S.D. W.Va. Sept. 17, 2015) (same).

Moreover, even if Petitioner had filed a motion to amend and add this new claim contemporaneously with his Response, it appears that leave to amend could not have been granted.  For Petitioner, the one-year period of limitation applicable to §2254 petitions expired, at the latest, on December 3, 2014.  *See doc. 54* at 6, n.1.  His response was filed almost ten months after that date.  *See doc. 40.*  Therefore, any amendment would be treated as a second or successive petition unless the amendment "relates back" pursuant to Fed. R. Civ. P. 15(c).  *See United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000); *Buchanan v. Lamarque*, 121 Fed. App'x 303, 306 (10th Cir. 2005); *see also Woodward*, 263 F.3d at 1142 (applying the same rationale to §2254 petitions).  Under Rule 15, an amendment relates back if it "asserts a claim … that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  While this language could be read broadly, the Supreme Court has expressly rejected such an approach in *habeas* petitions.  In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court reversed the Ninth Circuit's decision that the Fifth Amendment claim petitioner wished to add related back to his original Sixth Amendment claim.  It rejected petitioner's argument that both claims arose out of the

conduct, transaction, or occurrence because they were "trial rights" which were "related in time and type, for 'they arose on successive days during the trial and both challenged on constitutional grounds admission of pretrial statements.'"  *Id*. at 660-61.  Instead, the Supreme Court emphasized that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Id*. at 659 (citations omitted).

Here, Petitioner has made the claim that the state court erred in denying him an evidentiary hearing for his *habeas* petition.  In order for Petitioner to succeed on this claim, the core of operative facts for determining if the state court so erred must be found in the record before that court.  *See Cullen v. Pinholster*, 563 U.S. 170, 184 (2011). In contrast, the core of operative facts for Petitioner's new putative claim – that Petitioner's state *habeas* counsel providing him ineffective assistance of counsel by advising him not to waive his attorney-client privilege as to trial counsel – is the advice, and the basis for that advice, that state *habeas* counsel provided.  Without question, those facts are not to be found in the record.  To the undersigned, it is clear that these claims depend on very different cores of operative fact, and, therefore, the new putative claim would not relate back under Rule 15.  *See, e.g., Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000).  As a result, even if Petitioner had filed a motion to amend and add the new claim contemporaneously with his Response, leave to amend would not have been granted.

Based upon a similar analysis, Respondents ask this Court to "recommend dismissal with prejudice of the 'stand-alone' claim to allow [Petitioner] to exhaust available state-court remedies as to it, with the caveat that [Petitioner] would be prevented from reasserting this claim should he not prevail in state court." *Doc. 54* at 13. However, as the undersigned concludes that the ineffective assistance of state *habeas* counsel claim is not properly before the Court and Petitioner has not moved to add it, dismissal of the claim (with or without prejudice) would be improper. Respondents are likely correct that, should the state courts reject the ineffectiveness of *habeas* counsel claim, any attempt by Petitioner to raise this claim in federal court would be subject to a second and successive analysis. However, that analysis and determination need not be performed now. In the instant Petition, the undersigned simply recommends finding that the claim regarding ineffective assistance of state *habeas* counsel is not properly before this Court.

## IV.   PETITIONER'S CLAIMS BASED ON EVIDENTIARY RULINGS ARE NOT COGNIZABLE

As noted above, Petitioner argues that the New Mexico Supreme Court erred in rejecting his direct appeal. Three of the alleged errors -- (i) Officer Carter's warrantless entry into Econo Lodge Room 216, (ii) the warrantless swabbing of Petitioner's hands; and (iii) the admission of the boots taken from Room 216 despite the allegedly inadequate chain of custody – are not cognizable in a federal *habeas* petition.

A.　　　　Petitioner's Fourth Amendment Claims

With respect to the first two arguments from this list, Petitioner contended in state court that the acquired evidence must be suppressed because it was obtained in violation of the Fourth Amendment of the United States Constitution. *See doc. 14*, Exs. E, H, Q. He argues that the state court's rejection of the argument was erroneous and, therefore, he is entitled to federal *habeas* relief. However, Fourth Amendment claims are not cognizable on federal *habeas* review "where the State has provided an opportunity for full and fair litigation of" those claims.[3] *Stone v. Powell*, 528 U.S. 465, 482 (1976); *see also United States v. Lee Vang Lor*, 706 F.3d 1252, 1257 (10th Cir. 2013). "[T]he opportunity for full and fair litigation 'includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim,' a 'full and fair evidentiary hearing,' and 'recognition and at least colorable application of the correct Fourth Amendment constitutional standards.'" *Harding v. McCollum*, 565 Fed. App'x 764, 768-769 (10th Cir. 2014) (quoting *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978)).

It is undisputed that Petitioner had, and took advantage of, the opportunity to raise and present his Fourth Amendment claims. It is also undisputed that he had a full

---

[3] At his state trial, Petitioner also moved for suppression pursuant to Article II, Section 10 of the New Mexico Constitution. The state court rulings only explicitly rejected the claims based upon the New Mexico Constitution. *See doc. 14*, Ex. H at 5-6. Nonetheless, Petitioner does not argue that the state court did not also deny the federal constitutional claims. This choice is likely due to the fact that Article II, Section 10 of the New Mexico Constitution provides greater protection than the Fourth Amendment to the United States Constitution. *See State v. Leyva*, 149 N.M. 435, 452 (2011). Consequently, the federal claim is presumed to have also been adjudicated. *See Johnson v. Williams*, 133 S.Ct. 1088, 1094-96 (2013) ("To be sure, if the state-law rule subsumes the federal standard—that is, if it is at least as protective as the federal standard—then the federal claim may be regarded as having been adjudicated on the merits.").

and fair evidentiary hearing.[4]   Petitioner argues only that "the state courts failed to apply a colorable application of the correct Fourth Amendment constitutional standards." *Doc. 40* at 16.   Petitioner, however, fails to support this bold claim.   His arguments do not establish any gross errors in the standards used by the state court or its application of those standards.   At most, Petitioner argues that the state court reached the wrong result.   The undersigned is persuaded by the state court's opinion. However, even if it were otherwise, the undersigned rejects outright the contention that the state courts failed to apply a colorable application of the correct Fourth Amendment constitutional standards.   Thus, Petitioner's Fourth Amendment claims are not cognizable on federal *habeas* review and must be dismissed with prejudice.

### B.        Petitioner's Claim Based on Chain of Custody

Petitioner argues that the "State failed to establish an adequate chain of custody to permit the admission of the boots seized from Room 216 into evidence." *Doc. 3* at 7. However, the merits of this contention turn exclusively on the proper interpretation of New Mexico state law regarding evidence.   *See, e.g., Showalter v. Addison*, 458 Fed. App'x 722, 725 (10th Cir. 2012).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68

---

[4] In passing, Petitioner's Response mentions that "the suppression motions and hearings were in the context of Petitioner's disputes with his counsel and his counsel's generally deficient performance." *Doc. 40* at 15.   He never argues that this "context" meant that his evidentiary hearing was not full and fair.   He also never points to any ineffective performance by counsel which impacted the suppression motions or hearings.   Finally, any claim of ineffective assistance of counsel relating to the suppression issues would be an entirely new claim and thus not properly before the Court.

(1991).  Instead, "[i]n order for habeas corpus relief to be granted by a federal court

based on a state court evidentiary ruling, the rulings must render the trial so

fundamentally unfair as to constitute a denial of federal constitutional rights."  *Elliott v.*

*Williams*, 248 F.3d 1205, 1214 (10th Cir. 2001).  Even assuming imperfections in the chain

of custody for the boots, the evidence presented at trial supporting their admission was

more than sufficient to satisfy constitutional due process rights.  *See doc. 14* at 25.

Therefore, as presented, this claim is not cognizable on federal *habeas* review and must

be dismissed with prejudice.

## V.    REVIEWING PETITIONER'S REMAINING CLAIMS UNDER AEDPA

### A.    Framework

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[5]

the standard of review applicable to a particular claim depends upon how that claim

was resolved by the state courts.  *Id*.  If a claim was addressed on the merits by the state

courts, the standard of review is governed by 28 U.S.C. § 2254(d), which provides as

follows:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim—(1) resulted in a
> decision that was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of
> the United States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence presented
> in the State court proceeding.

---

[5] It is undisputed that AEDPA governs Petitioner's case.

28 U.S.C. §2254(d).  This standard grants significant deference to the state court's ruling

because "an unreasonable application of federal law is different from an incorrect

application of federal law. . . .   A state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

(citations omitted).  And, particularly relevant when reviewing ineffective assistance of

counsel claims rejected by a state court, the Supreme Court has explained that:

> [E]valuating whether a rule application was unreasonable requires
> considering the rule's specificity.  The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations."
> . . .  "Surmounting *Strickland*'s high bar is never an easy task." . . .
> Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult.  The standards created by
> *Strickland* and § 2254(d) are both "highly deferential," and when the two
> apply in tandem, review is "doubly" so.  The *Strickland* standard is a
> general one, so the range of reasonable applications is substantial.  Federal
> habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under §
> 2254(d).  When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable.  The question is whether there is any reasonable
> argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. at 101-05.

Moreover, the review under the § 2254(d) standard is "limited to the record that

was before the state court that adjudicated the claim on the merits."  *Cullen*, 563 U.S. at

181.  A federal court can hold an evidentiary hearing under § 2254(e) only if § 2254(d)

does not apply because the claim was not adjudicated on the merits, or if the Petitioner

satisfies the § 2254(d) standard without additional evidence.  *See, e.g., Milton v. Miller*,

744 F.3d 660, 668-73 (10th Cir. 2014).

**B.     The Standards and Limitations of §2254(d) apply because the state court adjudicated Petitioner's claims on the merits**

Based on the framework described above, the first question which must be

answered is whether the state court adjudicated Petitioner's claims "on the merits."  I

conclude that it did.

"When a federal claim has been presented to a state court and the state court has

denied relief, it may be presumed that the state court adjudicated the claim on the

merits in the absence of any indication or state-law procedural principles to the

contrary."  *Harrington*, 562 U.S. at 99.  It is undisputed that Petitioner presented his

claims to the New Mexico courts and they denied relief.

Petitioner's primary argument that the state court rulings were not "on the

merits" is based on the state court's failure to conduct a separate evidentiary hearing on

the *habeas* petition.  He argues that:

> The entirety of the state post-conviction Mr. Musacco's post-conviction
> proceeding was truncated because he was improperly advised not to
> waive his attorney-client privilege as to his trial counsel.  Although the
> Respondent argues Petitioner's IAC claims were fully adjudicated, as a
> practical matter they were not because he was advised not to waive his
> attorney-client privilege.  As a direct consequence, the state court judge
> refused to adjudicate the claims on the true merits of the case.  Under the
> Sixth and Fourteenth Amendments and pursuant to *Douglas v. California*,
> 372 U.S. 353 (1963), *Halbert v. Michigan*, 545 U.S. 605 (2005), and *Martinez v.
> Ryan*, 132 S. Ct. 1309 (2012), Petitioner had a right to effective assistance of
> habeas counsel.  Moreover, where the state court has not addressed the

merits of a claim, as is true here as a *de facto* matter, and the merits of the claim are properly before the federal court, the deferential standard of review described in the Anti-Terrorism and Effective Death Penalty Act (AEDPA) does not apply and the Court should instead review the claim *de novo*. *See Porter v. McCollum*, 130 S. Ct. 447, 452 (2009); *Wilson v. Beard*, 589 F.3d 651, 658 (3d Cir. 2009); *Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011).

*Doc. 40* at 5. Notwithstanding Petitioner's argument that his claims were not addressed on the merits "as a *de facto* matter," the state trial court did address, and reject, the substance of Petitioner's claims. What more does "on the merits" mean? Indeed, given the presumption that a ruling is on the merits, it is perhaps better understood by considering the types of decisions (including those found in the three cases cited by Petitioner) which are not "on the merits." Rejection of a claim is not "on the merits" if it is: (i) a result of inadvertence, *see Johnson v. Williams*, 133 S. Ct. 1088, 1097 (2013); (ii) due to matters of form and technicalities, *see id.*; (iii) based upon procedural grounds, such as waiver, *Wilson*, 589 F.3d at 658; or (iv) resolved on alternative grounds which are found to be insufficient to support the decision, *Porter*, 130 S. Ct. at 452-53 (state court rejected ineffective assistance of counsel claim on prejudice prong and did not address deficiency prong), *see also Breakiron*, 642 F.3d at 131 (state court rejected ineffective assistance of counsel claim on deficiency prong and did not address prejudice prong). While not an exclusive list, the dividing line can be discerned. A rejected argument is adjudicated "on the merits" unless the argument was rejected on procedural grounds, or was completely ignored either intentionally or by inadvertence. *See, e.g., Harrington,*

562 U.S. at 99 ("There is no merit either in [petitioner's] argument that § 2254(d) is

inapplicable because the California Supreme Court did not say it was adjudicating his

claim 'on the merits.' The state court did not say it was denying the claim for any other

reason.").

Here, the state court listed and rejected each of Petitioner's ineffective assistance

claims, expressly finding that he failed to satisfy either prong of the *Strickland*[6] test.  *See*

*doc. 14*, Ex. L.  In other words, every claim was explicitly rejected on substantive, as

opposed to procedural, grounds.  Petitioner provides no authority to support the

proposition that, notwithstanding these substantive rulings, they were not "on the

merits" because a separate evidentiary hearing was not held.  In fact, since the Supreme

Court's opinion in *Cullen*, courts have repudiated that argument.  *See, e.g., Atkins v.*

*Clarke*, 642 F.3d 47, 49 (1st Cir. 2011) (rejecting argument "that a state court has not

adjudicated a claim on the merits unless it has given a full and fair evidentiary hearing

and that therefore federal courts must hear new evidence if the state court has declined

to give a petitioner such a hearing").

Regarding this issue, although not cited or analyzed by Petitioner, the Tenth

Circuit opinion in *Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) (en banc)

(abrogation recognized in *Lott v. Trammell*, 705 F.3d 1167 (10th Cir. 2013)) must be

discussed.  In *Wilson*, the court held that when a state court refuses to hold an

---

[6] *Strickland v. Washington*, 466 U.S. 668, 686-88 (1984) (to prove an ineffectiveness claim the defendant must show that counsel's performance fell below an objective standard of reasonableness and that the deficiency prejudiced the defense).

evidentiary hearing and refuses to consider "material, non-record evidence[7] that has

been diligently placed before it," it has not adjudicated the claim brought under §2254

on the merits. *Id.* at 1290-93. As an initial matter, *Wilson* appears to conflict with the

Supreme Court's subsequent decision in *Cullen*. *See Atkins*, 642 F.3d at 49. Nonetheless,

the Tenth Circuit has not needed to consider this possible conflict, as *Wilson* was

abrogated by a change to the relevant state-court rule. *See Lott v. Trammell*, 705 F.3d

1167, 1211-13 (10th Cir. 2013); *Glossip v. Trammell*, 530 Fed. App'x 708, 736 (10th Cir.

2013).

Even assuming the continued viability of the *Wilson* rationale, it does not assist

Petitioner in the instant case. To fall within *Wilson* and thus warrant *de novo* review in

federal court: (1) the petitioner must have been diligent in presenting his evidence,

including in a non-record form; (2) the state court must have refused to hold an

evidentiary hearing; and (3) the state court must have refused to consider the

petitioner's non-record evidence. *See Wilson*, 577 F.3d at 1288-94; *see also Welch v.

Sirmons*, 451 F.3d 675, 704-09 (10th Cir. 2006) (claim adjudicated on the merits despite

lack of evidentiary hearing where state court considered proffered affidavits); *Bland v.

Sirmons*, 459 F.3d 999, 1030 (10th Cir. 2006) (same). Here, Petitioner was not diligent in

presenting his evidence on his ineffective assistance claims in state court. First, he

refused to waive his attorney-client privilege to enable the state court to properly

---

[7] "Non-record" evidence includes items like affidavits which are presented as proffers of evidence that would be presented at an evidentiary hearing. *See Wilson v. Workman*, 577 F.3d 1284, 1292 (10th Cir. 2009) (en banc).

investigate his counsel's performance.  Second, he failed to present any affidavits or

other non-record evidence in support of his claims.  Material non-record evidence could

have included: (i) an affidavit from Petitioner swearing to the alleged instructions he

gave his attorneys about the change of venue, the information he gave them about the

witnesses (Dr. Eric Westfried and Dr. Barbara Wright) he wanted them to call, and why

he refused to waive his attorney-client privilege;[8] and (ii) affidavits from Dr. Eric

Westfried and Dr. Barbara Wright reflecting what their testimony would have been if

they had been called.  As he failed to present any such evidence to the state court,

Petitioner was not diligent in the presentation of his evidence.

　　　　If he had presented it, there is no reason to conclude that the state court would

have refused to consider non-record evidence.  *Cf. Wilson*, 577 F.3d at 1289 (State court

was "explicit in its rejection of the proffered evidence….").  In fact, in addition to the

full record, the state court considered what was presented by the parties in the *habeas*

proceeding.  *See doc. 14*, Ex. L at 2 ("After reviewing the Petitioner's Petition and the

State's Response, the court concludes as follows…").  While Petitioner does not argue to

the contrary here, he did contend in his petition for writ of certiorari from the denial of

his state *habeas* action that the state court failed to take particular items in the record

into account.  *See doc. 14*, Ex. M at 3 (transcript of closing argument), Ex. M at 4 (pre-trial

motion for new counsel).  However, as the Tenth Circuit explained in *Lott*, given the

---

[8] Petitioner faults the state judge for failing to "h[o]ld an evidentiary hearing and inquir[ing] into Mr. Musacco's purported refusal to waive privilege."  *Doc. 40* at 7.  However, as discussed within, *Wilson* requires that the petitioner himself be diligent in presenting such evidence to the state court.

"Supreme Court's repeated admonitions that AEDPA's deferential standards of review do not require that there be an opinion from the state court explaining the state court's reasoning[,]" the state court is presumed to consider the evidence that state law requires it to review,[9] even in cases where the state court summarily disposes of an issue without discussing the evidence.  705 F.3d at 1213.  As it is well-established in New Mexico that "the inquiry on habeas corpus is directed to a review of the entire proceedings," the Court must presume that the state court considered the entire record notwithstanding its failure to discuss each and every item within it.  *Orosco v. Cox*, 75 N.M. 431, 433 (1965).  This presumption is bolstered by the fact that the judge who initially denied *habeas* relief was the judge who presided over Petitioner's trial.  *See, e.g. Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009) ("The trial judge is intimately familiar with the proceedings and the surrounding circumstances [and] is also in a position, based on the knowledge gained in the underlying criminal proceeding and on his or her role as a trier of fact in the habeas proceeding [to make rulings without evidentiary hearing.]")

Petitioner thus failed to diligently present the facts underlying his claims as required by *Wilson* by refusing to waive attorney-client privilege while making claims of ineffective assistance of counsel and by failing to present any non-record evidence to

---

[9] In *Lott*, the state law at issue was the Oklahoma Court of Criminal Appeals Rule 3.11.  *Lott v. Trammell*, 705 F.3d 1167, 1211-13 (10th Cir. 2013).  The state court had, in a separate case, clarified that "rule 3.11 obligates it to 'thoroughly review and consider a defendant's Rule 3.11 application along with other attached non-record evidence.'" *Id*. at 1213 (quoting *Simpson v. State*, 230 P.3d 888, 905 (Okla. Crim. App. 2010)).  Based on that holding, the Tenth Circuit concluded "even in cases, . . . where the OCCA summarily disposes of a defendant's Rule 3.11 application without discussing the non-record evidence, we can be sure that the OCCA in fact considered the non-record evidence in reaching its decision." *Id*.

support his claims.  Consequently, the lack of an evidentiary hearing by the state court does not transform an otherwise substantive ruling into one which is not "on the merits."

While it is not entirely clear, it appears that Petitioner also contends that the state court rulings were not "on the merits" because the state court's dismissal was "cursory."  *Doc. 40* at 7; *see also doc. 40* at 9-11 (in the context of arguing that the state court decision should be reviewed *de novo* because was clearly contrary to established Supreme Court precedent, Petitioner describes the state judge's ruling as being "anemic" and "striking [in] its brevity and dearth of legal or factual analysis.").  To the extent Petitioner makes this argument, it is easily rejected.  The Supreme Court has unequivocally held that a summary ruling without any reason given in support of the decision can be deemed an adjudication "on the merits."  *See Harrington*, 562 U.S. at 98-100.  The decision of the state court, at least at the trial level, went well beyond a summary disposition.  *See doc. 14*, Ex. L.  Its relative brevity serves as no basis to find the decision  to have been not "on the merits."

In conclusion, Petitioner has failed to overcome the presumption that the New Mexico state courts adjudicated his claims on the merits.  Therefore, the standards and limitations of §2254(d) apply.  Consequently, the state court rulings are entitled to the deference described in §2254(d), and the review under that deferential standard is "limited to the record that was before the state court that adjudicated the claim on the

merits." *Cullen*, 563 U.S. at 181.  Thus, only if Petitioner satisfies the 2254(d) standard

without additional evidence can this Court hold an evidentiary hearing under § 2254(e).

*See, e.g., Milton*, 744 F.3d at 668-73.

### C. The state court decisions rejecting Petitioner's ineffective assistance of trial counsel claims were not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States

Petitioner contends that he qualifies for *habeas* relief under § 2254(d)(1).  The

threshold question under that provision is whether there exists clearly established

Federal law, an inquiry that focuses exclusively on holdings of the Supreme Court.

*House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir.2008).  If clearly established Federal law

exists, a state-court decision is "contrary to" it "if the state court applies a rule different

from the governing law set forth in [Supreme Court] cases, or if it decides a case

differently than [the Supreme Court has] done on a set of materially indistinguishable

facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state-court decision is an "unreasonable

application" of clearly established Federal law when the state court "identifies the

correct governing legal principle from th[e Supreme] Court's decisions but

unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (internal

quotation marks omitted).

As noted by Petitioner, a state court decision can run afoul of this standard by

giving "lip service" to the proper rule, while in practice utilizing a different and

incorrect standard.  *See, e.g.,  A.M. v. Butler*, 360 F.3d 787, 796 (7th Cir. 2004) (citing an

objective standard but relying on subjective facts in court's analysis).  Nonetheless, as

noted above, this standard grants significant deference to the state court's ruling

because "an unreasonable application of federal law is different from an incorrect

application of federal law. … A state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (citations omitted).

> i.   *Ineffective Assistance claims based upon failure to move to dismiss on speedy
>       trial grounds and failure for change of venue*

On these claims, as with each of Petitioner's ineffective assistance claims, the

state court found that he failed to establish either deficient performance by trial counsel

or prejudice therefrom.  The undersigned will address these claims first because

Petitioner does not even attempt to defend them in his Response.  *See generally doc. 41*.

As Respondents point out in their Answer, Petitioner fails to argue, let alone establish,

the prejudice that flowed from the trial continuances or the venue in his case.  *See doc. 14*

at 18-19.  For example, Petitioner does not contend that witnesses or other pieces of

evidence were lost while he waiting for trial.  Additionally, the only three prospective

jurors who remembered the case well or had some connection to the victims were

excused.  *See doc. 14* at 19.  To the extent that Petitioner argues the prejudice should be

presumed for these alleged failures of counsel, they fall far outside the extreme

circumstances in which the presumption of prejudice attaches to a claim.  *See Bell v.*

*Cone*, 535 U.S. 685, 694-98 (2002) (setting out three circumstances where defendant is functionally without counsel); *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (counsel actively represented conflicting interests); *but see Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (mere possibility of conflict of interest is insufficient to impugn criminal conviction).  Given that the record reveals no prejudice based on these ineffective assistance claims, the state court's rejection of them was not contrary to, or an unreasonable application of, clearly established Federal law.

> ii.   *Ineffective assistance claims based upon failure to call Dr. Westfried*

Petitioner claims that his trial counsel was ineffective for failing to present expert psychological testimony from Dr. Eric Westfried.  According to Petitioner, Dr. Westfried would have testified that Petitioner suffered from a number of mental and emotional conditions that prevented him from being able to form deliberate intent.  *See doc. 3* at 12-13.  As with each of Petitioner's ineffective assistance claims, the state court found that he failed to establish either deficient performance by trial counsel or prejudice therefrom.

Petitioner yet again fails to establish the prejudice resulting from these alleged deficiencies.  "In order to show ineffective assistance of counsel based on the failure to call a witness, the defendant must show that the particular witness was willing to testify, what the testimony would have been, and that the testimony would have been sufficient to create a reasonable doubt as to guilt."  *Gustafson v. Long*, 2014 WL 4187828,

*8 (C.D. Cal. Apr. 16, 2014); *see also Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010)

("Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by

evidence indicating the witnesses's [sic] willingness to testify and the substance of the

proposed testimony.").  A plethora of case law from many jurisdictions has established

that the self-serving statements of the petitioner are insufficient to make these showings

and the submission of affidavits from the witnesses themselves are required.  *See*

*Gregory*, 601 F.3d at 352-53; *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (Counsel was

not ineffective for failing to call an alibi witness where "there is no evidence in the

record that this witness actually exists, other than from [petitioner's] self-serving

affidavit."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about

the testimony of a putative witness must generally be presented in the form of actual

testimony by the witness or an affidavit."); *United States v. Glick*, 710 F.2d 639, 645 (10th

Cir. 1983); *Lee v. Cully*, 2011 WL 1793174, *3 (W.D.N.Y. May 10, 2011); *Muhammed v.*

*Martel*, 2012 WL 1980775, *29 (N.D. Cal. June 1, 2012); *Galvan v. Ayers*, 2006 WL 657121,

*25-*27 (E.D. Cal. Mar. 15, 2006); *Ahluwalia v. Ayers*, 2010 WL 5088236, *31 (E.D. Cal.

Dec. 7, 2010) (Petitioner "must tender affidavits from the witnesses who he contends his

counsel neglected to interview or call, showing the helpful testimony for the defense

that they could have presented."); *Anthony v. Cain*, 2009 WL 3564827, at *8 (E.D. La. Oct.

29, 2009) ("This Court may not speculate as to how such witnesses would have testified;

rather, a petitioner must come forward with evidence, such as affidavits from the

uncalled witnesses, on that issue."); *Combs v. United States*, 2009 WL 2151844, at *10

(N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or

similar matter, from the alleged favorable witnesses suggesting what they would have

testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris*

*v. Director*, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an

affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim

of ineffective assistance."); *Fairley v. Jones*, 2015 WL 3562559, *26 (N.D. Fla. May 1, 2015)

("[E]vidence about the testimony of a putative witness must generally be presented in

the form of actual testimony by the witness or an affidavit.").

Here, some evidence beyond Petitioner's self-serving assertion is particularly

necessary in order to establish prejudice given the audaciousness of the testimony

supposedly attributable to an expert witness – that an individual who, as demonstrated

by the trial record, was operating perfectly competently in society was **incapable** of

forming the deliberate intent to kill.  *See Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th

Cir. 1986) ("Where the only evidence of a missing witnesses' testimony is from the

defendant, this Court views claims of ineffective assistance with great caution.").

Instead, the record before the state court lacks anything beyond Petitioner's bald

assertions about the Dr. Westfried's anticipated testimony. [10]  As Respondent notes,

---

[10] The lack of such evidence cannot be blamed on the state court's refusal to conduct an evidentiary
hearing.  As noted above, Petitioner could have submitted an affidavit from Dr. Westfried as non-record
evidence with his state *habeas* petition.  In fact, the record contains no indication that Dr. Westfried was
going to testify at the evidentiary hearing had one been held.

Petitioner offers nothing but his own assertion that: (1) Petitioner was evaluated by Dr. Westfried; (2) Dr. Westfried concluded that Petitioner was unable to form deliberate intent at the key moment; or (3) Dr. Westfried, assuming he was properly qualified and permitted to testify on the matter, would have sworn that Petitioner was unable to form the *mens rea* required to be found guilty of first-degree murder. *Doc. 14* at 17. Given the lack of any admissible evidence before the state court that Dr. Westfried would have testified at the trial in the manner described by Petitioner, the state court's finding that Petitioner had failed to establish prejudice as required under *Strickland* was not contrary to, or an unreasonable application of, clearly established Federal law.[11]

### iii.   *Ineffective assistance claims based upon failure to call Dr. Wright*

Petitioner next claims that his trial counsel was ineffective for failing to present expert psychological testimony from Dr. Barbara Wright. According to Petitioner, Dr. Wright would have testified that he was "physically and mentally abused growing up, surrounded by violence his entire life, suffers from mental illness, etc." *Id.* at 13. Because Petitioner raises this claim for the first time in the instant Petition and the State

---

[11] Petitioner decries that state court's "anemic adjudication of [Petitioner's] IAC claims" because of the opinion's "brevity and dearth of legal or factual analysis." *Doc. 40* at 9. This, he claims, "resulted in a decision clearly contrary to established Supreme Court precedent." *Id.* The Supreme Court has explicitly rejected this logic. *See Harrington*, 562 U.S. at 104-13 (Summary ruling without any reason given in support did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."). Petitioner argues that the claimed inadequacy of the opinion means that the state court "pa[id] 'lip service' to the ineffective assistance of counsel claims." *Doc. 40* at 11. As noted above, a state court decision can run afoul of 2254(d) standard by giving "lip service" to the proper rule. *See A.M. v. Butler*, 360 F.3d 787, 796 (7th Cir. 2004). However, an essential component of such an error is that the court went on to apply the wrong rule. *Id.* While Petitioner disagrees with the state court's ruling and its brevity, Petitioner fails to provide any basis on which to conclude that it applied the wrong rule to his ineffective assistance claims.

has waived the defense of exhaustion, the Court reviews this claim *de novo*. Nonetheless, it fails for the same reason as Petitioner's claims regarding Dr. Westfried.

The sole material before this Court regarding Dr. Wright's anticipated testimony comes from the self-serving statements of Petitioner. Across all his filings in state court and this Court, his claims regarding Dr. Wright's testimony are limited to the following sentence: "Petitioner requested the expert testimony of psychologist Dr. Barbara Wright stating that Mr. Musacco was physically and mentally abused growing up, surrounded by violence his entire life, suffers from mental illness, etc." *Doc. 3* at 13. Even if the Court could accept the accuracy of this proffered testimony at face value, it would not suffice to show prejudice as it fails to demonstrate (i) that Dr. Wright was willing to testify, (ii) what, in adequate detail, the testimony would have been, or (iii) that the testimony would have been sufficient to create a reasonable doubt as to guilt. In any event, Petitioner has again failed to present any affidavit from Dr. Wright, or other admissible evidence about what her testimony would have been if she had been called at trial. Consequently, Petitioner has failed to establish that he was prejudiced by his trail counsel's failure to call Dr. Wright as a witness.

     *iv.    Ineffective assistance claims based on trial performance*

Under this category, Petitioner states broadly that: "trial counsel informed him that they had no defense theory other than to test the state's evidence; investigative leads [Petitioner] insisted his trial counsel explore were ignored; and meritorious

motions that may have resulted in the state being disadvantaged or even the charges being dismissed [were not pursued]." *Doc. 40* at 14.  To the extent that this statement raises claims not dealt with elsewhere,[12] Petitioner fails to present any argument as to prejudice.

Petitioner's primary argument in this category relates to trial counsel's closing argument and the broader theory of the defense.  Petitioner claims that his trial counsel was not a meaningful adversary to the government because counsel "conce[ded] he committed murder at closing argument."  *Doc. 40* at 13; *see also doc. 3* at 15-16 (Counsel "essentially does the prosecution's job by immediately conceding that his client is guilty of double homicide.").  In support, Petitioner points to the beginning of trial counsel's closing argument:

> Good morning ladies and gentlemen.  I'm not going to stand here this morning and insult your intelligence by telling you that, given the evidence you've heard in the courtroom over the last three days, that you should conclude that Beau Musacco is not responsible for the death of those two ladies.  I'm not going to stand here and insult your intelligence by telling you that Beau Musacco is not guilty of some crime as a result of what he's done, and I'm not going to sit here and tell you that those ladies deserved to die, they didn't, and he bears responsibility for that.

*Doc. 3* at 15-16 (quoting *doc. 15* (Mar. 6, 2009 Jury Trial Tr., Vol. 8 at 21)).

Contrary to Petitioner's claim that counsel was conceding guilt on the charges, a review of this passage, and indeed of the closing argument in its entirely, shows that

---

[12] Earlier, the undersigned has addressed the claims based upon motion to dismiss for speedy trial and change of venue, as well as claims based upon possible expert testimony.  The undersigned will next address the arguments regarding the closing argument.

counsel was arguing for a lesser included offense.  *Doc. 15* (Mar. 6, 2009 Jury Trial Tr.,

Vol. 8 at 21-45).   It is true that trial counsel conceded that Petitioner was responsible for

the deaths of the two women.  However, the evidence did not reasonably support any

alternative conclusion.  *See doc. 14* at 13-15.  In fact, even before this Court, Petitioner

does not appear to deny that he caused the deaths of the two women in question.  *See*

*doc. 3* at 9 (statement of facts); *doc. 3* at 12 (claiming counsel should have argued for

"charge of manslaughter and/or second degree murder).  Trial counsel's strategic choice

for his closing argument was consistent with Petitioner's current basis for asserting his

innocence – that he lacked the deliberate intent required to be convicted of first-degree

murder.[13]

Further, Petitioner's argument that counsel's approach to the closing argument

was constitutionally ineffective is without merit.  Where, as here, the evidence against a

defendant is strong, a nuanced or partial concession of culpability has been recognized

as a reasonable tactic in trying to persuade the jury either to acquit outright or to

convict on a lesser offense.  *See Florida v. Nixon*, 543 U.S. 175, 190-193 (2004); *see also*

*Steward v. Grace*, 299 Fed. App'x 203, 204-205 (3rd Cir. 2008) ("overwhelming evidence

of the defendant's guilt" made counsel's request that jury convict of second-degree

murder a reasonable strategy, where request was made in an effort to spare defendant

---

[13] Indeed, Petitioner appears to recognize that his trial counsel attempted to contest the first-degree murder charge in his closing argument, but Petitioner thinks he could have pursued this goal more effectively.  *See doc. 3* at 16 ("Stark admission by Mr. Musacco's counsel most likely had the stunning effect of blinding the jury to the very subtle contrasts and counterpoints that [Mr. Musacco's counsel] made [later in closing argument] to ameliorate his shocking initial statements….").

from a conviction for first-degree murder).  It appears that Petitioner's trial counsel

employed this tactic by conceding the *actus reus* of the charged offense while attempting

to obtain either outright acquittal or conviction on only a lesser-included offense based

on the lack of required *mens rea*.  In his closing argument, he described Petitioner, who

had been drinking on the night in question, as bleeding and disoriented from having

struck a light pole in his Mercedes.  *Doc. 15* (Mar. 6, 2009 Jury Trial Tr., Vol. 8 at 26).  He

further argued that the alcohol and the car accident in fact combined to prevent

Petitioner from forming "any real rational thought, let alone any kind of real

deliberation."  *Id*.  In addition, his trial counsel emphasized that Petitioner was an out-

of-town visitor who had just wrecked his car in a late-night snowstorm, was disoriented

and became upset and apprehensive as the Explorer approached him.  Therefore,

argued counsel, Petitioner killed Ms. Gilkey and Ms. Davidson without "any real

thought process" and "out of anger and fear."  *Id*. at 25-31.  Counsel then made another

strong effort to persuade the jury that his client did not form a deliberate intent to kill

Ms. Gilkey and Ms. Davidson, maintaining that "[i]f anything scream[ed] rash and

impulsive act, what occurred in this case [was] it."  *Id*. at 34-35.  This argument was far

from a concession of guilt to the charges brought by the prosecution.  To the contrary,

counsel's approach demonstrates an attempt to remain credible before the jury while at

the same time zealously advocating to avoid a conviction of first-degree murder and

imposition of a life sentence.  *Compare* N.M. Stat. Ann. § 31-18-14 (punishment for the

capital offense of first-degree willful and deliberate murder is life imprisonment) *with*

N.M. Stat. Ann. § 31-18-15(A)(7) (sentence for the third-degree offense of voluntary

manslaughter is six years' imprisonment). The undersigned has no hesitancy in

concluding that trial counsel's approach was entirely reasonable. *See Williams v. Tucker*,

2012 WL 2675468, at *12-*14 (N.D. Fla. Apr. 30, 2012) (counsel's admission that

defendant had committed burglary was not simultaneous concession of defendant's

guilt of felony murder; instead, under the circumstances, admission was reasonable trial

strategy aimed at (1) achieving credibility with the jury; (2) highlighting weaknesses in

the State's case; and (3) attempting to persuade the jury to acquit defendant as to the

most serious offense, a capital felony). More to the point, there is no doubt that the state

court's ruling that the argument was reasonable was not itself unreasonable. *See*

*Harrington,* 562 U.S. at 101-05 ("[T]the question is not whether counsel's actions were

reasonable. The question is whether there is any reasonable argument that counsel

satisfied Strickland's deferential standard.").

### D. State court decisions rejecting Petitioner's claim that the evidence was insufficient for conviction were not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States

Petitioner's final claim is that the evidence was insufficient to support his

conviction for first-degree murder. On direct appeal, Petitioner argued that the

evidence showed that, at most, he committed "a rash and impulsive shooting after a

vehicular accident[.]" *Doc. 14*, Ex. E at 32.  The New Mexico Supreme Court considered and rejected this contention on the merits.

"[T]he Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White*, 531 U.S. 225, 228-229 (2001). For purposes of due process, evidence is sufficient to support a criminal conviction if, "after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  A claim of insufficient evidence is not to be treated "as a chance to second-guess the jury's credibility determinations [or] reassess the jury's conclusions about the weight of the evidence presented." *United States v. Johnson*, 57 F.3d 968, 971 (10th Cir. 1995).  Indeed, as the Tenth Circuit has explained, "[t]he Supreme Court has repeatedly stressed 'the deference to be given to the trier of fact' and the 'sharply limited nature of constitutional sufficiency review.'" *Barger v. Oklahoma*, 238 Fed. App'x 343, 345-346 (10th Cir. 2007) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).  As a result, a reviewing court "must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Id*. at 346 (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

From the record, the undersigned is persuaded that the jurors could reasonably have found, beyond a reasonable doubt, that Petitioner, while being upset at having

been involved in an automobile accident, took the time and deliberate action to: (1)

walk up a snowy, icy off-ramp from his Mercedes to the victims' Explorer; (2) enter the

Explorer; (3) take aim; (4) pull the trigger and shoot one of the women; (5) take aim

again; (6) pull the trigger again and shoot the other; and (7) then deliberately flee the

scene.  From these facts, the jurors could reasonably find the Petitioner could form, and

did form, the deliberate intent necessary for first-degree murder.  As such, the New

Mexico Supreme Court's rejection of Petitioner's sufficiency challenge was not contrary

to, or an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States.

### E.  Conclusion Regarding Petitioner's Cognizable Claims

With the exception of the claim involving the testimony of Dr. Wright, each of

Petitioner's cognizable claims were adjudicated "on the merits."  Thus, the state court

rulings are judged pursuant to the standard described in § 2254(d).  Each ruling passes

muster because they were not contrary to, or an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States.

With respect to the claim involving the putative testimony of Dr. Wright, even reviewed

*de novo*, Petitioner's claim fails because he has not demonstrated prejudice.  Under these

circumstances, Petitioner is not entitled to an evidentiary hearing before this Court.

## VI.   CONCLUSION

The undersigned recommends dismissal with prejudice of all claims brought by Petitioner.  Petitioner's claims based on evidentiary rulings should be dismissed because they are not cognizable in federal *habeas* proceedings.  Petitioner's claims based upon the ineffective assistance of trial counsel and sufficiency of evidence should be dismissed because the state court's rejection of them was not contrary to, or an unreasonable application of, clearly established Federal law.  Petitioner's claim based on ineffective assistance of counsel for failure to call Dr. Wright should be dismissed upon *de novo* review because Petitioner has not demonstrated prejudice under *Strickland*.  The Court should find that Petitioner's argument regarding the ineffective assistance of state *habeas* counsel is not properly raised in the instant Petition.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**