# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BEAU JAMES MUSACCO,

      Petitioner,

v.                                                                  Civ. No. 14-683 MV/GBW

GERMAN FRANCO, *et al.*,

      Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Petitioner's Motion for Relief from Judgment re: Final Order and Order Adopting Report and Recommendations, his Motion for an Order granting the aforementioned motion, and his Motion for a Hearing.  *Docs. 62, 64, 69*.  Having considered Petitioner's motions (*docs. 62, 64, 69*) and Respondents' responses (*docs. 67. 70*), I DENY Petitioner's Motion for a Hearing (*doc. 69*) and RECOMMEND that the Court deny Petitioner's other two Motions (*docs. 62, 64*).

In so recommending, I find the following: (i) one claim in Petitioner's motion is a second or successive habeas petition over which the Court does not have jurisdiction; (ii) transferring this claim to the Tenth Circuit for consideration is not in the interest of justice; and (iii) none of Petitioner's remaining claims establish an extraordinary circumstance that requires the Court to vacate its final order (*doc. 58*) and final

1

judgment (*doc. 57*) and afford Petitioner the chance to file objections to my proposed

findings and recommended disposition (PFRD) (*doc. 55*).[1]

## I.   BACKGROUND

### i.   *State Proceedings: Trial, Appeal, and Post-Conviction Review*

On January 18, 2007, a New Mexico grand jury indicted Petitioner on, *inter alia*,

two counts of willful and deliberate first-degree murder in violation of N.M. Stat. Ann.

§ 30-2-1(A)(1), one count of fourth-degree tampering with evidence in violation of N.M.

Stat. Ann. § 30-22-5(B)(4), and one count of concealing identity in violation of N.M. Stat.

Ann. § 30-22-3.  *Doc. 14-3* at 53, 60.  For approximately two years, Petitioner and the

State of New Mexico engaged in discovery.  *See doc. 14-3* at 53–60.  During this time, the

Second Judicial District Court of New Mexico ordered Petitioner to submit to a buccal

swab to gather his DNA (*doc. 14-1* at 111–112), and Petitioner twice asked the court to

replace his public defender for alleged inadequate representation. *See docs. 14-2* at 29–

32, *14-3* at 58.

Before trial, Petitioner filed motions in limine to suppress the buccal swab, its

resulting DNA test, and evidence that the police had taken from his hotel room after his

---

[1] The docket entry for this document refers to it as a report and recommendations, while the title of the document itself is PFRD. In the interests of consistency and avoiding confusion, I use term "proposed findings and recommended disposition" to refer to my earlier report and recommendations and all documents of this type.

arrest. *Doc. 15-2*; *see also docs. 14-1* at 16–22, *14-3* at 76–84.  After a hearing, Judge

Sanchez denied these motions. *Doc. 15-2* at 7, 24.

On March 6, 2009, a New Mexico jury convicted Petitioner on two counts of

willful and deliberate first-degree murder, one count of fourth-degree tampering with

evidence, and the misdemeanor offense of concealing identity.  *Docs. 14-1* at 2–5, *14-3* at

53.  Later that year, the Second Judicial District Court of New Mexico sentenced

Petitioner to a total term of sixty-two and a half years of imprisonment, to be followed

by two years of parole.  *Doc. 14-1* at 4.

On July 21, 2009, Petitioner appealed his murder and evidence-tampering

convictions to the New Mexico Supreme Court.  *Doc. 14-1* at 6.  He argued the

following: (i) a police officer's reentry into his hotel room shortly after his arrest

violated both the Fourth Amendment of the United States Constitution and Article II,

Section 10 of the New Mexico Constitution as the reentry was neither pursuant to a

warrant nor justified by an exception to the warrant requirement; (ii) the court-ordered

buccal swab was the fruit of a poisonous tree because it relied upon evidence obtained

from the aforementioned warrantless reentry of the hotel room as well as a warrantless

search and seizure of Petitioner's DNA subsequent to his arrest; (iii) Judge Sanchez

erred at trial by admitting into evidence the boots that police had taken from the hotel

room over Petitioner's objection to their chain of custody; and (iv) the evidence

presented at trial was insufficient to support the convictions.  *See doc. 14-1* at 35–63, 105–

06.  The New Mexico Supreme Court affirmed Petitioner's convictions.  *Id.* at 119.

On April 29, 2013, Petitioner filed a habeas petition in state court seeking to have

his murder, evidence-tampering, and identity-concealment convictions vacated for

ineffective assistance of trial counsel.  *Doc. 14-2* at 2.  He argued that he had suffered

prejudice from his trial attorney's failure to: (i) move to dismiss for speedy trial

violations; (ii) move for a change of venue; (iii) present expert witness testimony as to

his alleged inability to form the mens rea required for first-degree murder; or (iv)

perform reasonably at trial.  *Id.* at 2, 7–17.  He further contended that he was a victim of

systemic ineffective assistance of trial counsel because his counsel "was most likely

inundated with other felony cases," which probably prevented his counsel from

providing quality legal representation on his case.  *Id.* at 7–8.  On March 11, 2014, Judge

Sanchez denied Petitioner's state habeas petition without an evidentiary hearing.  *Id.* at

41–43.  Later that year, the New Mexico Supreme Court denied Petitioner's petition for

writ of certiorari.  *Doc. 14-3* at 51.

ii.   *Instant Federal Habeas Proceedings*

On August 22, 2014, Petitioner filed a timely federal habeas petition asking the

Court to vacate his murder, evidence-tampering, and identity-concealment convictions.

*Doc.* 3 at 1, 21.  Proceeding *pro se*, Petitioner articulated three categories of claims: (i) the

five ineffective assistance of trial counsel claims that he had raised in his state habeas

petition (*see id.* at 6; *doc. 55* at 4); (ii) the two claims of unlawful search and seizure, the claim of insufficient evidence, and the claim of unlawful admission of evidence, all of which he had raised on direct appeal of his conviction to the New Mexico Supreme Court (*see docs. 3* at 7, *55* at 4); and (iii) a new claim that the state district judge had erred in denying his state habeas petition without an evidentiary hearing after Petitioner had declined to waive attorney-client privilege with respect to his trial counsel (*see docs. 3* at 6, 11, *55* at 4–5). Later, when responding to Respondents' motion to dismiss, Petitioner, then represented by Mary (Molly) E. Schmidt-Nowara, recast this last claim as a claim of ineffective assistance of state habeas counsel. *Doc. 55* at 5.

On August 3, 2016, I issued a PFRD that advised the Court to dismiss all of Petitioner's claims with prejudice. *Id.* at 35. In support of my recommendation, I found the following: (i) the state habeas court's dismissal of Petitioner's five claims of ineffective assistance of trial counsel was not contrary to, or an unreasonable application of, clearly established Federal law (*id.* at 23–28, 32); (ii) Petitioner's evidentiary claims of unlawful search and seizure and improper admission of evidence were not cognizable in a federal habeas petition; any error made by the state court in its application of state evidentiary law did not render Petitioner's trial so fundamentally unfair as to violate his right to due process; and the New Mexico Supreme Court's rejection of Petitioner's insufficiency of evidence claim was not contrary to, or an unreasonable application of, clearly established Federal law (*id.* at 23–28, 33–34); and

finally, (iii) Petitioner did not properly raise his claims of ineffective assistance of state habeas counsel since he had failed to plead it in his habeas petition (*id.* at 7).[2]

Petitioner had fourteen days to file an objection to my PFRD if he wished to preserve appellate review of this Court's final judgment. *Id.* at 35. He did not do so. *Doc. 57* at 2. On December 4, 2017, the Court adopted my PFRD and issued a final order dismissing Petitioner's habeas petition with prejudice. *Id.* at 3; *doc. 58*.

On October 15, 2019, Petitioner requested a copy of the docket sheet and informed the Court that Ms. Schmidt-Nowara no longer represented him. *Doc. 59*. On December 30, 2019, Petitioner again informed the court that he was no longer represented by counsel and requested a copy of the docket sheet and all documents filed after May 26, 2017. *Doc. 60*. On December 31, 2019, the Court terminated Ms. Schmidt-Nowara's representation and mailed Petitioner the docket sheet and docket entries 57 through 60. This mailing did not include my PFRD (*doc. 55*) because it had been filed on August 3, 2016. On February 14, 2020, Petitioner requested that the Court provided him with, among other things, another copy of the docket sheet and copies of all entries filed in his case. *Doc. 61*.

On June 29, 2020, Petitioner filed the instant motion, asking the Court to vacate its final judgment under Fed. R. Civ. P. 60(b)(6) and grant him leave to file objections to

---

[2] I also found that even if Petitioner had filed a motion to amend and add his new claim of ineffective assistance of state habeas counsel to his federal habeas petition, the one-year period of limitation applicable to 28 U.S.C. § 2254 would have barred me from considering it. *Doc. 55* at 8–9.

my PFRD. *Doc 62* at 9. He argues that the following constitute the extraordinary circumstances required to reopen his case: (i) my finding that he had enjoyed an opportunity to litigate his unlawful search and seizure claims fully and fairly in state court despite the New Mexico Supreme Court applying state constitutional standards—rather than federal ones—to these claims (*id.* at 5–7); (ii) my refusal to hold oral argument on the above claims (*id.* at 5); (iii) the Court's failure to assess whether the state court's evidentiary rulings had violated his right to due process by rendering his trial fundamentally unfair (*id.* at 7); and (iv) the failure of Petitioner's federal habeas counsel to object to my PRFD, apprise Petitioner of the need to do so, or give him accurate information about the status of his case (*id.* at 2, 8).[3]

In support of his last claim, Petitioner asserts under oath that Ms. Schmidt-Nowara deceived him about the status of his case from approximately September 2016 until mid-to-late 2019. *Id.* at 2. During their periodic, if not regular, contact during this time, Ms. Schmidt-Nowara allegedly failed to inform Petitioner about my PFRD, the need to object to its contents, or their failure to do so. *Id.* Rather, she initially assured Petitioner that the Court had made no decision about his case. *Id.* Then, in early 2018, after the Court had adopted my PFRD, Ms. Schmidt-Nowara allegedly informed

---

[3] Respondent characterizes Petitioner's Rule 60(b) motion as only asserting claims (i) and (iv). *See doc. 67* at 4. I, however, must construe Petitioner's motion liberally as he is *pro se*. *See Weinbaum v. City of Las Cruces, N.M.*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Petitioner that the Court had dismissed his habeas petition and that she had filed an appeal. *Id.* From 2018 until communication between Petitioner and Ms. Schmidt-Nowara broke down in 2019, Petitioner claims that Ms. Schmidt-Nowara repeatedly lied to him about her appeal of his habeas petition. *Id.* Petitioner states that he did not learn of this deception or the true status of his case until communication with Ms. Schmidt-Nowara broke down and he reached out to the Court for an update about the status of his case in October 2019. *See docs. 59, 62 at 3.*

Since the Petitioner filed the instant motion, he has received a "copy of the case docket with all documentation," including my PFRD.[4] He has made no requests to supplement or amend his Rule 60(b)(6) motion to address any information that was unavailable to him prior to the receipt of these documents. Rather, he has informed the Court that the motion is fully briefed. *See doc. 68.*

## II.    DEFINITION OF INQUIRY

Rule 60(b) prescribes the limited set of circumstances under which a court may relieve a party from a final judgment. *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Rule 60(b)(6), the catchall provision under which Petitioner makes his motion, permits a court to reopen movant's case upon a showing of "any … reason justifying relief from

---

[4] The Court mailed Petitioner these documents on July 22, 2020. As the mailing was not returned as undeliverable, the Court may presume that Petitioner received these documents. *See Rosenthal v. Walker*, 111 U.S. 185, 193 (1884) ("The rule is well settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached is destination at the regular time, and was received by the person to whom it was addressed.").

the operation of judgment other than the more specific circumstances set out in Rules

60(b)(1)-(5)."  *Id.* at 529 (internal quotation marks omitted).  In the habeas context,

however, this rule does not sweep as broadly as its plain text suggests.  *See id.*  Rather,

the Antiterrorism and Effective Death Penalty Act (AEDPA) divests district courts of

jurisdiction over second or successive habeas applications—including those brought via

a Rule 60(b) motion—absent authorization from the appropriate circuit court of appeals.

*Spitznas v. Boone*, 464 F.3d 1213, 1215 (10th Cir. 2006); 28 § U.S.C. 2254.  If a Rule 60(b)

motion contains a claim that amounts to a second or successive habeas petition not yet

authorized by a circuit court of appeals, district courts must dismiss that claim for lack

of jurisdiction unless justice requires its transfer to the circuit court for consideration.  *In

re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008).

My task, therefore, is threefold: (i) determine whether the Court has jurisdiction

over any of the claims Petitioner raises in his Rule 60(b)(6) motion; (ii) resolve whether

justice requires transferring any claim over which the Court does not have jurisdiction

to the Tenth Circuit for consideration; and (iii) assess whether any claims that remain

merit releasing Petitioner from this Court's final judgment under Rule 60(b)(6) and

granting him leave to file objections to my PFRD.  *See Spitznas*, 464 F.3d at 1217.

## III.  JURISDICTION

I find that the first claim that Petitioner raises in his Rule 60(b)(6) motion

amounts to a second or successive habeas petition over which the Court does not have

jurisdiction, but the remaining three do not.  A claim raised in a Rule 60(b)(6) motion constitutes a second or successive habeas application "if it attacks the federal court's previous resolution of a claim *on the merits*."[5]  *See Gonzalez*, 545 U.S. at 532.  Such attacks may take many forms but share a common core: their adjudication requires the Court to reassess the correctness of its previous determination about the merits of a ground for habeas relief.  *See In re Pickard*, 681 F.3d 1201, 1206 (10th Cir. 2012).

Conversely, a claim raised in a Rule 60(b) motion does not constitute a second or successive habeas petition

> if it either (1) challenges only a procedural ruling of the habeas court which precluded a merits determination of the habeas application, or (2) challenges a defect in the integrity of the federal habeas proceeding, provided that such a challenge does not itself lead inextricably to a merits-based attack on the disposition of a prior habeas petition.

*Spitznas*, 464 F.3d at 1216 (citations omitted).  The phrase 'lead inextricably' in the second disjunctive prong, however, "should not be read too expansively."  *In re Pickard*, 681 F.3d at 1206.  A Rule 60(b) motion is not improper under this prong if it ultimately leads to a claim for habeas relief, but rather if its "success … depends on a determination that the court had incorrectly ruled on the merits in the habeas proceeding."  *Id.*  Phrased alternatively, the second prong amounts to the assertion that the petitioner "did not get a fair shot in the original … proceeding because its integrity

---

[5] The phrase "on the merits" in this context "refer[s] to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief." *Gonzalez*, 545 U.S. at 532 n.4.

was marred by a flaw that must be repaired in further proceedings." *Id.* Claims under

this prong include fraud on the federal habeas court, *Gonzalez*, 545 U.S. at 532 n.5, and

failure to consider a claim raised in the habeas petition, *Spitznas*, 464 F.3d at 1225.

Claims under the first prong include misapplications of habeas exhaustion, procedural

default, and statute of limitations rules. *See Gonzalez*, 545 U.S. at 532 n.4.

A. ***The Court Does Not Have Jurisdiction over Petitioner's Fourth Amendment Claims as They Constitute Second or Successive Habeas Petitions***

I find that Petitioner's claim that he lacked a chance to litigate his unlawful

search and seizure claims fully and fairly in state court is a second or successive habeas

petition over which the Court lacks jurisdiction. Petitioner raised these exact same

Fourth Amendment claims in his underlying habeas petition. *See docs. 3* at 7, *55* at 4.

This Court ruled that they were not cognizable under *Stone v. Powell*, 428 U.S. 465

(1976). *See docs. 55* at 11–12, *57* at 2. Petitioner now argues that the Court misapplied

*Stone v. Powell* in its ruling since the New Mexico State Supreme Court applied state

constitutional standards—instead of federal ones—when adjudicating his Fourth

Amendment claims. *Doc. 62* at 5–6. Relief under this argument, however, would

require the Court to reassess its previous ruling that Petitioner's Fourth Amendment

claims were not cognizable. As such, the argument constitutes a second or successive

habeas petition. *See Spitznas,* 464 F.3d at 1216 (quoting *Gonzalez*, 545 U.S. at 531)

(holding that a Rule 60(b) motion that seeks to vindicate a habeas claim by challenging

11

the habeas court's previous ruling on the merits of that claim is a second or successive habeas petition).

### B. *The Court Has Jurisdiction over Petitioner's Claim About the Lack of Oral Argument*

I find that Petitioner's claim stemming from my refusal to hold an oral argument or order supplemental briefing on his Fourth Amendment claims is not a second or successive petition and therefore is within the Court's jurisdiction. The adjudication of this claim does not require the Court to revisit its earlier determination of the merits of Petitioner's habeas petition. Rather, it requires the Court access the extent to which the briefing and hearing processes in Petitioner's earlier habeas proceeding gave him a fair shot to convince the Court as to the merits of his case. As such, the claim alleges a defect in the integrity of these proceedings and is therefore not a second or successive habeas petition. *See In re Pickard*, 681 F.3d at 1206.

### C. *The Court Has Jurisdiction over Petitioner's Claim About the Court Failing to Assess the Due Process Implications of the State Court's Evidentiary Rulings as the Claim Is Not a Second or Successive Habeas Petition*

I find that the Court has jurisdiction over Petitioner's claim that it failed to assess whether the state trial court's evidentiary rulings violated his due process rights because this claim does not amount to a second or successive habeas petition. Like his Fourth Amendment claim, Petitioner pled this due process claim in his underlying habeas petition. *See docs. 3* at 7, *55* at 4. This Court ruled that the state court evidentiary decisions did not violate Petitioner's right to due process. *See docs. 55* at 13, *57* at 2.

Petitioner now argues that "it was unfair for the Court to dismiss [his] state law violation claims without analyzing whether these violations rendered [his] trial fundamentally unfair." *Doc. 62* at 7.  While Petitioner's argument may be factually incorrect,[6] it does not ask the Court to redo its earlier determination on the merits of Petitioner's due process claim.  Rather, it alleges that the Court failed to adjudicate this claim.  As such, it is not a second or successive habeas petition. *See Spitznas*, 464 F.3d at 1225 (holding that the allegation that a federal habeas court failed to rule on a claim that was properly presented in the underlying habeas petition asserts a defect in the integrity of the federal habeas proceeding).

**D.**  ***The Court Has Jurisdiction over Petitioner's Claim About His Abandonment by Federal Habeas Counsel as It Is Not a Second or Successive Habeas Petition***

Lastly, I also find that the Court has jurisdiction over Petitioner's claim about his abandonment by federal habeas counsel because this claim does not constitute a second or successive habeas petition.  Petitioner alleges that his counsel failed to object to the PFRD or apprise him of the need to do so and repeatedly misrepresented the status of his case for more than three years. *See doc. 62* at 2, 8.

---

[6] The Court did adjudicate whether the state court evidentiary rulings rendered Petitioner's state trial "so fundamentally unfair as to constitute a denial of federal constitutional rights."  *See docs. 55* at 13 (quoting *Elliot v. Williams*, 248 F.3d 1205, 1214 (10th Cir. 2001)), *57* at 2 (adopting the entirety of my PFRD (*doc. 55*)). It expressly held that "[e]ven assuming imperfections in the chain of custody for the boots, the evidence presented at trial supporting their admission was more than sufficient to satisfy constitutional due process rights."  *Doc 55* at 13.

In *Gonzalez*, the Supreme Court emphasized that "an attack based … on habeas counsel's omissions *ordinarily* does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably."  *Gonzalez*, 545 U.S. at 532 n.5 (emphasis added) (citation omitted).  Federal courts routinely interpret this language to render Rule 60(b) claims based on the acts or omissions of habeas counsel as substantive challenges to decisions on the merits. *See, e.g.*, *United States v. McKinney*, 743 F. App'x 252, 254–55 (10th Cir. 2018) (unpublished) (inmate legal assistant failed to include claims in underlying habeas petition); *In re Jasper,* 559 F. App'x 366, 371–72 (5th Cir. 2014) (unpublished) (federal habeas counsel failed to locate and file critical evidence); *Ward v. Norris*, 577 F.3d 925, 934 (8th Cir. 2009) (federal habeas counsel failed to discover the petitioner's incompetence); *Post v. Bradshaw*, 422 F.3d 419, 424–25 (6th Cir. 2005) (federal habeas counsel failed to pursue court authorized discovery).  *See also United States v. Harris*, No. 08-cv-0158, 2010 WL 2231893, at *3 (S.D. Ala. June 2, 2010) (unpublished) (gathering cases).

Such interpretations include conduct by counsel that barred appellate review of the habeas court's decision.  *See Gray v. Mullin*, 171 F. App'x 741, 744 (10th Cir. 2006) (unpublished) (federal habeas counsel failed to attach state record to the appeal); *Carter v. United States*, No. 2:15-cv-00186-NT, 2019 WL 668832, at *3 n.7 (D. Me. Feb. 19, 2019) (unpublished) (federal habeas counsel informed the petitioner of the denial of his petition on the merits but neglected to file the appeal requested by the petitioner);

*United States v. Soto-Valdez*, No. cv-99-1591-PHX-RCB (LOA), 2013 WL 5297142, at \*6 (D.

Ariz. Sept. 19, 2013) (unpublished) (federal habeas counsel failed to file an opening brief

in the circuit court of appeals after the federal habeas court had granted a certificate of

appeal).

Several courts, however, have distinguished abandonment by habeas counsel

from neglect or error by habeas counsel and held that a Rule 60(b)(6) motion based on

the former is not a second or successive habeas petition.  *See Ramirez v. United States*, 799

F.3d 845, 847–50 (7th Cir. 2015) (federal habeas counsel failed to inform the petitioner of

the court's denial of his habeas petition, file any post judgment motions, or file a notice

of appeal); *Harris v. United States*, 367 F.3d 74, 80 (2d Cir. 2004) (federal habeas counsel

failed to raise a claim on appeal); *Outlaw v. United States*, No. 5:17-cv-397-BO, 2018 WL

717004, at \*2 (E.D.N.C. Feb. 5, 2018) (unpublished) (federal habeas counsel "walked off

the job mid-motion"); *United States v. Perez-Barocela*, No. 2:12-757-2, 2017 WL 228294, at

\*1, (S.D. Tex. Jan. 19, 2017) (unpublished) (federal habeas counsel failed to inform the

petitioner that the government had moved to dismiss his habeas petition or file a reply

to the motion); *Chambers v. United States*, No. 3:10-cv-3191, 2016 WL 3676086, at \*1–2, 5

(C.D. Ill. July 6, 2016) (unpublished) (federal habeas counsel, after notifying the

petitioner of his withdraw, failed to file the requisite motion to withdraw to allow the

petitioner to proceed pro se and file a brief in support of his request for a certificate of

appealability).  *Cf. Mackey v. Hoffman*, 682 F.3d 1247, 1248–50, 1253–54 (9th Cir. 2012)

(granting Rule 60(b)(6) motion based on federal habeas counsel's failure to file a traverse without considering the jurisdictional issue).  *But see In re Edwards*, 865 F.3d 197, 204–05 (5th Cir. 2017) (holding that abandonment by habeas counsel "is the definition of a successive claim").

While *Ramirez*, *Harris, Outlaw,* and *Perez-Barocela* are not binding precedent, their analysis is persuasive.  Attorney abandonment is distinct from the habeas counsel error that *Gonzalez* flagged as ordinarily a request for "a second chance to have the merits determined favorably."  *See* 545 U.S. at 532 n.5.  Well-settled principles of agency law establish that a client like Petitioner bears the risk of negligent conduct on the part of his counsel.  *Maples v. Thomas*, 565 U.S. 266, 280–81 (2012).  However, "a markedly different situation is presented … when an attorney abandons his client without notice." *Id.* at 281.  Here, "having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative [and] his acts or omissions … 'cannot fairly be attributed to [the client].'" *Id.* (citing Restatement (Third) of Law Governing Lawyers § 31, Comment f (1998) and quoting *Coleman v. Thompson*, 501. U.S. 722, 753 (1991)) (parentheticals omitted).  Indeed, "[c]ommon sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word."  *Holland v. Florida*, 560 U.S. 631, 659 (2010) (Alito, J., concurring).  As such, I find that a Rule 60(b)(6) claim alleging attorney abandonment during habeas proceedings asserts a defect in the integrity of these

16

proceedings and so is a claim over which the Court has jurisdiction.[7]  *See Ramirez*, 799 F.3d at 847–50; *Harris*, 367 F.3d at 80; *Outlaw*, 2018 WL 717004, at *2; *Perez-Barocela*, 2017 WL 228294, at *1.

Consequentially, I also find that the Court has jurisdiction over Petitioner's claim of deceit and desertion by his federal habeas counsel since the conduct that Petitioner alleges amounts to attorney abandonment rather than mere counsel error.  Like the counsel in *Ramirez* and *Perez-Barocela*, Petitioner's counsel purportedly neither informed him of the issuance of my PFRD and the need to file objections nor took any steps to preserve his appellate rights.  *See Ramirez*, 799 F.3d at 849; *Perez-Barocela*, 2017 WL 228294, at *1; *doc. 62* at 2.  Rather, she allegedly misled Petitioner into believing first that the Court had not yet ruled on his habeas petition and later that she had appealed the Court's dismissal of his habeas petition.  *See doc. 62* at 2.  Like in *Ramirez* and *Perez-Barocela*, granting relief to Petitioner would not require the Court to redetermine its earlier decision as to the merits of his habeas petition, but rather to reopen proceedings so that Petitioner could continue litigating his habeas claims by filing objections to my PFRD, an opportunity taken from him by his counsel's supposed deceit and desertion.  *See Ramirez*, 799 F.3d at 849; *Perez-Barocela*, 2017 WL 228294, at *1; *doc. 62* at 9.  As such,

---

[7] The Fifth Circuit held otherwise in *In re Edwards*, 865 F.3d at 204–05. This ruling, however, has been criticized as overly broad and inconsistent with other Fifth Circuit precedent.  *Gamboa v. Davis*, 782 F. App'x 297, 301 (5th Cir. 2019) (unpublished) (Dennis, J., concurring).

Petitioner's claim arising from the deceit and desertion by his habeas counsel is not a

second or successive habeas petition.[8]

* * *

To summarize, I find that the Court has jurisdiction over the second, third, and

fourth claims that Petitioner raises in his Rule 60(b)(6) motion as they allege defects in

the integrity of his habeas proceedings.  I also find that the Court lacks jurisdiction over

the first claim that Petitioner raises in his motion because it constitutes a second or

successive habeas petition that asks the court to reconsider its earlier adjudication on

the merits of his Fourth Amendment claims.

## IV.    TRANSFER

Having resolved that the Court lacks jurisdiction over one of the claims in

Petitioner's Rule 60(b)(6) motion, I now must decide whether the Court should dismiss

that claim or transfer it to the Tenth Circuit for consideration.  28 U.S.C. § 1631 requires

the Court to transfer Petitioner's claims to the Tenth Circuit for consideration as a

second or successive habeas petition "if it is in the interest of justice."  *See In re Cline*, 531

---

[8] It may be argued that *Gray v. Mullin* casts this claim as a second or successive habeas petition over which the Court does not have jurisdiction.  In *Gray*, the Tenth Circuit held that a Rule 60(b)(6) motion based on the failure of the petitioner's counsel to attach required documentation to his appeal was second or successive habeas petition.  *See* 171 F. App'x at 744.  Not only is *Grey* not binding, however, but the conduct of the counsel in *Gray* is distinct from that of Petitioner's counsel.  In *Gray*, the counsel appealed the habeas court's denial of petitioner's claims but made an error in the process of doing so: he failed to include the state trial transcripts and other documents referenced in the appellate briefs in the appellate record causing the Tenth Circuit to affirm the lower court's ruling.  *See id.* at 743. The attorney conduct alleged by Petitioner, however, is not an error in the appellate process, but rather abandonment during this process altogether.  *See doc. 62* at 2.

F.3d at 1251.  Assessing the interest of justice is a discretionary inquiry whose factors

include:

> (i) whether the claims would be time barred if filed anew in the proper forum, (ii) whether the claims alleged are likely to have merit, and (iii) whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction.

*Id.* (citing *Trujillo v. Williams*, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006)) (roman numerals

added).  Bad faith exists where "a party is aware or should be aware that [his]

unauthorized second or success motion cannot be heard in district court."  *See United*

*States v. Bradford*, 552 F. App'x 821, 823 (10th Cir. 2014) (unpublished).  A second or

successive habeas claim is meritless unless it was not presented in a previous habeas

petition and is based on either (i) newly discovered evidence of a constitutional

violation, or (ii) a new and retroactive rule of constitutional law articulated by the

Supreme Court.  *See* 28 U.S.C. §§ 2244(b)(1), (2).  The Court does not abuse its discretion

if it declines to transfer frivolous, non-meritorious claims.  *In re Cline,* 531 F.3d at 1252

(citing *Phillips v. Seiter,* 173 F.3d 609, 610 (7th Cir. 1999)).

Transferring Petitioner's first claim to the Tenth Circuit for consideration does

not further justice as it is meritless and made in bad faith.  In this claim, Plaintiff alleges

that the Court wrongfully found that he had the opportunity to fully and fairly litigate

his Fourth Amendment claims in state proceedings.  *Doc. 62* at 5–7.  This claim lacks

merit because it is a restatement of one of the claims in the habeas petition underlying

this case.  *See docs. 3* at 7, *55* at 4, *57* at 2, *62* at 5–7.  The Tenth Circuit cannot consider

such claims.  *See* 28 U.S.C. § 2244(b)(1) (requiring circuit courts to dismiss a claim

presented in a second or successive habeas petition if it was made in a prior petition).

This claim was also filed in bad faith as it alleges that the Court's earlier ruling on its

merits was incorrect.  *Gonzalez*, which Petitioner cited in his motion, put him on notice

that the Court lacks jurisdiction over Rule 60(b)(6) claims that make such allegations.

*See* 545 U.S. at 532.  As such, transferring this to the Tenth Circuit for consideration as

second or successive habeas petition is not in the interest of justice.

**V.      RULE 60(b)(6)**

Having resolved the disposition of the claim over which the Court does not have

jurisdiction, I now must determine whether any of the three claims over which the

Court does have jurisdiction require it to set aside its final order (*doc. 58*) and final

judgment (*doc. 57*) under Rule 60(b)(6) and reopen the time period for filing objections

to my PFRD (*doc. 55*).

Granting relief under Rule 60(b)(6) is a matter committed to this Court's sound

discretion.  *See Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (citing

*Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp.*, 837 F.2d 423, 426 (10th Cir. 1988)).

The rule provides the Court with "a grand reservoir of equitable power to do justice in a

particular case."  *F.D.I.C. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998)

(quoting *State Bank of S. Utah v. Gledhill* (*In re* Gledhill), 76 F.3d 1070, 1080 (10th Cir.

1996)).  It "should be liberally construed when substantial justice will … be served."

*Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (citations omitted).  Yet, the rule is not a substitute for appeal, and "must be considered with the obvious need for finality of judgments."  *Brown v. McCormick*, 608 F.2d 410, 413 (10th Cir. 1979) (citation omitted).  Nor may the rule be used to grant relief if the basis for that relief falls within the ambit of another Rule 60(b) provision.  *In re Gledhill*, 76 F.3d at 1080 (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988)).

Relief under Rule 60(b)(6) is only available in extraordinary circumstances, which "rarely occur in the habeas context."  *See Gonzalez*, 545 U.S. at 535.  In determining whether these circumstances exist, courts consider a wide range of factors.  *Buck v. Davis*, 137 S. Ct. 759, 778 (2017).  These factors include the extent to which the onset of such circumstances was in the movant's control, *see Ackermann v. United States*, 340 U.S. 193, 202 (1950), or the movant's fault, *see Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993).  They also entail "the risk of injustice to the parties in the particular case, the risk that denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process."  *Liljeberg*, 486 U.S. at 863.

Construing Petitioner's motion liberally, I find that he has failed to establish the extraordinary circumstances that the Court requires to vacate its final order (*doc. 58*) and final judgment (*doc. 57*) and grant him leave to file objections to my PFRD (*doc. 55*).

While Petitioner's motion is not time-barred, he has failed to show that preserving the Court's final judgment and final order could perpetuate injustice. There is no evidence before the Court that reopening proceedings and allowing Petitioner to object to my PFRD could result in a different determination as to the merits of his habeas petition. As such, circumstance in which Petitioner finds himself is not one of the few, extraordinary circumstances that allow the Court to grant relief under Rule 60(b)(6).

### A. *Petitioner Filed His Claim in a Timely Manner*

A movant seeking relief under Rule 60(b)(6) must make his motion "within a reasonable time." Fed. R. Civ. P. 60(c)(1). "There is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion; courts have found periods of as little as a few months unreasonable, and have found periods of as long as three years reasonable." *Sudeikis v. Chicago Transit Auth.*, 774 F.2d 766, 769 (7th Cir. 1985). Reasonableness depends upon "the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Mullin v. High Mountain,* 182 F. App'x 830, 833 (10th Cir. 2006) (unpublished) (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)). Where "the time for appeal has passed, the interest in finality must be given great weight." *Ashford*, 657 F.2d at 1055. The Tenth Circuit has consistently found that district courts do not abuse their discretion by denying a Rule 60(b)(6) motion where the movant provides insufficient justification for

any delay.  *See, e.g., Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1177–78 (10th Cir. 2005);

*Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004), *abrogated on other*

*grounds*, *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006); *Security Mut.*

*Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1067–68 (10th Cir. 1980).

As a preliminary matter, the Court must determine the applicable time period for

assessing Petitioner's reasonableness.  Petitioner argues, and Respondents do not

contest, that the Court should measure the timeliness of his Rule 60(b)(6) motion from

the date on which he learned that his counsel had abandoned him rather than the date

on which the Court issued the order denying his habeas petition.  *See docs. 62* at 4, *67*.

Petitioner is correct.  The Tenth Circuit and its sister circuits assess

reasonableness starting from the date on which the movant knew or should have

known of the grounds for Rule 60(b) relief.  *See, e.g., Bouret-Echevarria v. Caribbean*

*Aviation Maint. Corp.*, 784 F.3d 37, 43 (1st Cir. 2015) (overturning a district court for not

calculating time from when the movants learned of the potential jury misconduct that

formed the basis of their motion); *Foley v. Biter*, 793 F.3d 998, 1004 (9th Cir. 2015)

(overturning a district court, in part, for measuring time from the date on which the

movant learned that the court had denied his habeas petition rather than the date on

which he learned that his counsel had abandoned him); *First RepublicBank Fort Worth v.*

*Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992) ("[T]he timeliness of the motion is

measured as of the point in time when the moving party has grounds to make such a

motion, regardless of the time that has elapsed since the entry of judgment."); *Security Mut. Cas. Co.*, 621 F.2d at 1067–68 (calculating time from the date of the district court's order because it "should have made the parties aware of the grounds for … relief").

Assessing the timeliness of Petitioner's Rule 60(b) from early January 2020, at which time he discovered that his former counsel had abandoned him, I find that Petitioner filed his Rule 60(b) motion in a reasonable time. Given Petitioner's limited access to legal resources as a state prisoner and his lack of legal representation or legal training, taking just under six months to identify and research avenues for relief is justified. *See Foley*, 793 F.3d at 1004.

Any prejudice to Respondents is negligible because no party has changed its position in reliance of the Court's final judgment: Petitioner remains in prison seeking release and Respondents defend his imprisonment. *See Phelps v. Alameida*, 569 F.3d 1120, 1138 (9th Cir. 2009). If Petitioner's habeas proceedings were reopened, "the parties would simply pick up where they left off." *Id.* Petitioner would file objections to my PFRD, while Respondents would defend it. While this defense would tax Respondents' time and resources, such a tax has been reasonably foreseeable to Respondents since Petitioner filed his habeas petition and there is no evidence in the record that they have substantially changed their resources in reliance on this Court's final judgment.

Petitioner had limited practical ability to learn earlier of his attorney's abandonment assuming that she deceived him as to the status of his case from the filing of my PFRD in 2016 until their communication broke down around October 2019 and Petitioner had no reason to believe during this time that she was lying to him. *See doc. 62* at 2–3. It may be argued that Petitioner could and should have monitored his case independently of his counsel and reached out to the Court at an earlier date to ascertain the true status of his habeas petition. *See Gurganus v. Cain*, No. 08-1082, 2010 WL 2010489, at *2 (E.D. La. May 17, 2010) (unpublished). Courts, however, have not penalized movants for reasonably relying on their counsel's representations where they have diligently inquired with their counsel as to the status of their case. *See, e.g., Foley*, 793 F.3d at 1000–01, 1004 (habeas petitioner reasonably relied on his counsel's statements that "the federal courts are super slow" and there was "nothing to do but wait" for six years). In fact, courts have not even required movants to contact courts about the status of their cases when their counsel does not respond to their inquiries. *See Holland*, 560 U.S. at 652–53; *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011).

Finally, while the interest in finality must be given great weight, the weight is insufficient to offset lack of prejudice to Respondents, the limited ability of Petitioner to learn about his attorney's abandonment on an earlier date, and the fact that this abandonment is the cause of Petitioner's delayed filing. Petitioner filed his Rule 60(b)(6) motion approximately two-and-a-half years after the closure of the appeal

period.  Courts, however, have granted relief for longer delays in analogous situations.

*See, e.g. Foley*, 793 F.3d at 1001, 1004 (Rule 60(b)(6) filed approximately nine-and-a-half

years after closure of appeal period).  Petitioner's Rule 60(b)(6) motion, therefore, is

timely.

**B.**   ***Petitioner Has Not Shown that Reopening Proceedings to Allow Him to File Objections to My PFRD Could Lead to a Different Determination as to the Merits of His Habeas Petition***

"It has long been established that as a precondition to relief under Rule 60(b), the

movant must provide the district court with reason to believe that vacating judgment

will not be an empty exercise or a futile gesture."  *Murray v. District of Columbia*, 52 F.3d

353, 355 (D.C. Cir. 1995) (citations omitted).  As a result, district courts outside the Tenth

Circuit have denied motions to vacate a final judgment based on the failure of the

habeas petitioner's counsel to file objections to a PFRD because the habeas petitioner

did not establish that the objections that he wished to file would have merit. *See*

*Gurganus*, 2010 WL 2010489, at *2. *Cf. Villarreal v. California*, No. 2:18-cv-3239-TLN-EFB,

2020 WL 703725, at *2 (E.D. Cal. Feb. 12, 2020) (unpublished) (denying a Rule 59(e) to

amend a judgment based on the failure of the movant's counsel to object to a PFRD

because the movant "has not offered any cogent theory of what objections his counsel

might have raised to salvage his [p]etition").

The Tenth Circuit has not expressly ruled that a habeas petitioner must show

merit in his underlying habeas petition to prevail on a Rule 60(b)(6) motion.  *See United*

*States v. Marizcales-Delgadillo*, 243 F. App'x 435, 438 n.1 (10th Cir. 2007) (unpublished) ("express[ing] no opinion" as to whether a habeas petitioner must show merit in his underlying habeas petition to prevail on a Rule 60(b)(6) motion).  Nor does it appear to have followed its sister circuits in adopting sweeping language that requires a showing of merit in all Rule 60(b)(6) motions.  *See Pease v. Pakhoed Corp.*, 980 F.2d 995, 998 (5th Cir. 1993); *United States v. 5 Sylvan Road*, 928 F.2d 1, 5 (1st Cir. 1991), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1988); *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990); *Lepkowski v U.S. Dep't of Treasury*, 804 F.2d 1310, 1314 (D.C. Cir. 1986); *Beshear v. Weinzapfel*, 474 F.2d 127, 132 (7th Cir. 1973).  However, it has long held that a movant seeking relief from a default judgment or a judgment adopting a jury verdict must show a meritorious claim or defense for a court to set aside its judgment.  *See Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972); *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970).

There is no reason as to why the rationale for showing a meritorious claim or defense does not extend from the contexts of default judgment and judgment adopting a jury verdict to the Petitioner's situation.  As the Tenth Circuit has noted in the default judgment context, the preferred disposition of any case is a merits determination after full litigation.  *See Gomes*, 420 F.2d at 1366.  "However, this judicial preference is counterbalanced by considerations of social goals, justice and expediency."  *Id.*  The necessity for this balance exists in all forms of proceedings.  Here, where the Court has

already issued a determination on the merits of Petitioner's habeas proceedings, *see doc. 57*, the balance tips even further towards requiring a showing that reopening proceedings could lead to a different result.  As such, I find that the extraordinary circumstances required to grant Petitioner relief under Rule 60(b)(6) cannot exist absent a showing by Petitioner that the objections that he wishes to file to my PFRD have merit.

Petitioner has not made this showing.  His Rule 60(b)(6) motion alleges that he has objections that he wishes to file to my PFRD but does not identify them.[9]  *See doc. 62*. The Court, however, "must have before it more than mere allegations that a [potential ground for a different result] exists" to find that it has merit.  *See Gomes*, 420 F.2d at 1366.  Alternatively, even if the Court construes the other claims that Petitioner raises in his Rule 60(b)(6) motion as objections to my PFRD, these objections lack merit.

Petitioner first claims that this Court and I applied the incorrect law in our determinations that he had a full and fair opportunity to litigate his unlawful search and seizure claims in state court.  *See doc. 62* at 5–6.  As I noted in my PFRD, which the Court later adopted as its final judgment, a full and fair opportunity to litigate Fourth Amendment claims only requires "colorable application of the correct Fourth

---

[9] Although the Court did not mail Petitioner a copy of my PFRD until after he had filed his Rule 60(b)(6) motion, Petitioner nonetheless had knowledge of its findings when he filed his motion because he cites to specific pages of my PFRD in his motion and quotes specific parts of its legal analysis.  *See doc. 62* at 5–6. Moreover, Petitioner could have asked for leave from the Court to supplement or amend his Rule 60(b)(6) upon receipt of my PFRD from the Court but did not do so.  Rather, he informed the Court that briefing on this matter was complete.  *See doc. 68*.

Amendment constitutional standards." *Doc. 55* at 11 (quoting *Harding v. McCollum*, 565

F. App'x 764, 769 (10th Cir. 2014) (unpublished)).  Petitioner alleges that the Court and I

incorrectly applied this standard in finding that he had failed "to establish any gross

errors in the standards used by the state court or its application of those standards"

even though the state court had applied a state constitutional standard—rather than a

federal one—to his unlawful search and seizure claims.  *Doc. 62* at 5–6.

Petitioner's allegation lacks merit.  As I noted in my PFRD, colorable application

of the correct Fourth Amendment standards exists where a state court applies a state

constitutional standard that offers greater protections than its federal counterpart, such

as that of the New Mexico Constitution.  *Doc. 55* at 11 n.3 (citing *Johnson v. Williams*, 568

U.S. 289, 297–301 (2013)).  Petitioner objects to my citation of *Johnson* since the case is

from the procedural default context.  *Doc. 62* at 5–6.  Petitioner is correct that *Johnson* is a

procedural default case.  *See Johnson*, 568 U.S. at 297–301.  However, he fails to explain

why its holding, that, for the purposes of procedural default, a state court has

adjudicated a federal constitutional claim on the merits despite applying a state

constitutional standard when the state constitutional standard is at least as protective as

its federal counterpart, does not also apply to assessing whether the state court has

applied a colorable constitutional standard.  Moreover, even if Petitioner had provided

such an explanation, it would be incorrect.  The Supreme Court itself has held that state

courts do not violate clearly established federal law by applying state constitutional

standards that are more protective than their federal counterparts.  *See Early v. Packer*, 537 U.S. 3, 8 (2002).  As such, I did not error in finding that Petitioner had an opportunity for full and fair litigation of his Fourth Amendment claims where the state court applied the more protective standard in New Mexico Constitution[10] instead of the less protective standard of the U.S. Constitution.  Petitioner's objection to the contrary lacks merit.

Petitioner also argues that "the Court refused to apply the law to [his] claims of erroneous evidentiary rulings."  *Doc. 62* at 7.  However, "it is not the province of a federal habeas court to reexamine state court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (citation omitted).  Rather, a federal habeas court may only grant relief based on a state court evidentiary ruling if it "render[ed] the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Elliot v. Williams*, 248 F.3d 1205, 1214 (10th Cir. 2001) (citation omitted).  During Petitioner's murder trial, the state offered testimonial evidence to authenticate the evidence taken from Petitioner's hotel room.  *See doc. 14* at 25.  In reviewing this evidentiary ruling, I found in my PFRD, which the Court later adopted as its final judgment, that, even if this evidence were insufficient to establish chain of custody, it was sufficient for a reasonable fact finder to identify the boots as belonging to Petitioner

---

[10] The protections offered by Article II, Section 10 of the New Mexico Constitution are broader than those offered by the Fourth Amendment of the U.S. Constitution.  See *New Mexico v. Yazzie*, 437 P.3d 182, 194 (N.M. 2019) (listing examples of these broader protections).

such that their admission into evidence did not violate Petitioner's due process rights. *See docs. 55* at 13, *57* at 2.  In limiting my assessment of the state court evidentiary rulings to their effect on the fairness of Petitioner's trial, I did apply the law to the adjudication of Petitioner's state law evidentiary claims.  *See Humphreys v. Gibson*, 261 F.3d 1016, 1022–23 (10th Cir. 2001).  As such, Petitioner's objection to the contrary is without merit.

## VI.    CONCLUSION

The undersigned recommends denying Petitioner's Rule 60(b)(6) motion to vacate the Court's final order (*doc. 58*) and final judgment (*doc. 57*) and reopen the time to file objections to my PFRD on the merits of his habeas petition (*doc. 55*).Petitioner's motion does not require the Court to grant him the relief that he seeks.  The Court lacks jurisdiction over one claim that the motion raises and transferring this claim to the Tenth Circuit for consideration is not in the interest of justice.  While the three remaining claims are within the Court's jurisdiction, there is no evidence that preserving the Court's final order and final judgment risks perpetuating an injustice. Petitioner has not demonstrated that reopening his habeas proceedings to allow him to file objections to my PFRD could result in a different determination as to the merits of his habeas petition.  As such, none of the circumstances that Petitioner raises amounts an extraordinary circumstance that allows the Court to grant him the relief that he seeks.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**